Good morning. The first case on our call this morning is agenda number five, case number 1 0 5 1 3 7 in Ray Randall M. Mr Trevill, ready to proceed. Good morning, your honors, counsel, and may it please the court. I'm Assistant Attorney General Carl Trevill representing the people of Illinois. Section 5 slash 410 of the Juvenile Court Act of 1987 states in relevant part, minors under 17 years of age shall be kept separate from confined adults and may not at any time be kept in the same cell, room, or yard with adults confined pursuant to criminal law. In the next sentence, the statute says that persons 17 years of age and older who have a petition of delinquency filed against them may be confined in an adult detention facility. And in the next sentence requires that a specific hearing take place in order for that 17 year old to be transferred to an adult detention facility. Thus, under the plain language of the act, people, excuse me, minors under 17 years of age must be kept separate from adults. Minors over 17 years of age may be kept in an adult detention facility and that sentence doesn't contain any sight or sound requirements. Therefore, under the plain language of subsection 4102C5, there is no requirement that 17 year olds, such as respondent, be kept separate from adults when they're placed into an adult detention facility. Isn't the problem here, Mr. Trevill, that the appellate court and the trial court used the wrong statute? Why does 410 even apply to this case? 410 applies to this case, Your Honor, because 410 is discussing where people who are detained must be kept after they've been arrested under the Juvenile Court Act, but before an adjudication or trial has taken place. So, subsection 4102C5 does apply to this case. But we're talking about, does this governor even speak to the trial court at the detention hearing, which is what occurred in this case? Yes, Your Honor. This section of the Juvenile Court Act is titled Detention or Shelter Hearing and lays out the description of the requirements for certain age categories for their placement into different facilities. The next section of the statute deals with detention or shelter care hearings, specifically. This is a very important point, because this is going to decide whether this entire thing is moot or not, which is an issue in this case. I believe in the record, there's an indication, I believe, from the state's attorney indicating that this provision of the Act, which everybody seems to be talking about, doesn't apply. And it would appear that 410 governs what the police may do with a minor between the time of his arrest and the time he is first brought before the court. And that's not what occurred here. This is at a detention hearing, right? That's right, Your Honor. The state's position at this time is that the appellate court was correct that subsection 410 does apply. And the rationale is that this section of the statute is dealing with detention, which is the same thing that the detention or shelter care hearing statute is dealing with in the very next section of the Act. So the two sections need to be read together. And what the detention is, the temporary detention is that this statute is conflating here, is the time frame between arrest and the trial. So it is not only referring to the first 12 hours following the minor's arrest? It's referring to a number of different hours of time when the juvenile is kept. Under subsection 2D1, for instance, it talks about the first 40 hours. And that's the section where the appellate court and respondent rely upon in order to find the sight and sound separation requirement. What about 5501? It specifically sets forth the conditions under which minors with pending delinquency matters may be held. It says, 501 subparagraph 4, minors 12 years of age or older must be kept separate from confined adults and may not at any time be kept in the same cell room or yard with confined adults. It seems to me, and obviously I'm jumping on you early here, and counsel can address it as well. All of the problems that the appellate court wrestled with in this case are the result of everyone involved focusing on what apparently is the wrong statute. 410 specifically allows minors 17 years age of older to be held with adults, but that's because it applies only to the first few hours following the minor's arrest where local lockups are often the only option. And then once we get to 501, it seems clear what they have to do with the minors. Well, even if that interpretation were correct, Your Honor, and 501 is what applied to this case instead of 410, 501-4 contains the same express limitation that's found in 410-2D-1, which is that that specific subsection with the sight and sound requirement only applies to the first 40 hours of the detention. So the way I read those statutes is that they're overlapping. 510-4 and 4, excuse me, 501-4 and 410-2 are really dealing with the same time period. It's just that 410 is going into more specifics about the actual conditions necessary for the detention, whereas 501 is dealing more specifically with what the trial court must do at a detention hearing. Right, but I mentioned, even if that's the case, there is a mootness issue here where both sides, I believe, are invoking the public interest exception to sort out 410. If this Court believes 410 wasn't the proper statute, there is no longer any public interest exception. By the way, I think it's interesting to note that somewhere in the briefs there's an indication that courts have never addressed this. Maybe they've never addressed it because they've been applying the other statute. But the public interest exception goes away if this isn't the proper statute, and then this case once again becomes moot. That's correct, Your Honor. If this Court feels that 501-4 is what should have been applied here and discussed in this case, then there would be no need to address the public interest interpretation of 410, which is what we had conceded in our PLA, or excuse me, not in our PLA, but in our briefs, is that the public interest exception should apply because it's important to get this Court's interpretation of exactly what is meant by 410-2C. In any event, Your Honor, it's also important to discuss the appellate court's handling of whether or not the procedures in place under subsection 410-2C were appropriate. And again, this is something that the Court would only reach if it feels that subsection 410 is what was being, what is the proper statute in this circumstance. But assuming that it was, the procedural requirements that are found in 410 are constitutional under the due process clause. The appellate court's opinion goes too far in taking procedural requirements from another statute and essentially rewriting subsection 410, whether that's because the Court was upset about the way that this hearing eventually took place in the lower court, or because it was dealing with the wrong statute entirely is unclear. But assuming it was dealing with the correct statute, it was improper for the appellate court to essentially rewrite subsection 410 when there was no due process violation in this case. And, Your Honor, I think I've covered all the major points that I wanted to cover at the opening, unless there are any questions. I'll reserve the rest of my time for rebuttal. Thank you, Mr. Trevo. Ms. Montgomery. Good morning, Your Honors. Counsel. May it please the Court. My name is Jamie Montgomery. I'm an assistant defender with the Office of the State Appellate Defender. And I represent the minor, Randall M. I think one of the big issues in this case that we need to understand is that, as this Court has frequently had to remind the lower courts, the Supreme Court rules are not suggestions. They're requirements that must be followed. And here, what the appellate court did was remind the lower courts and the jails and the county juvenile detention centers that the laws of this land are not suggestions. They must be followed. Now, Justice Thomas, you addressed whether or not the correct statutes were being addressed in this case. And I think in the appellate court, I raised the issue of Section 5-410 to address the fact that Randall and presumably no other minors in Lake County were getting these hearings that they were entitled to. I also raised a second issue of whether once a minor is transferred to the jail, whether or not those minors may be held in the general population of the jail. In the appellate court's interpretation, they focused on Section 5-410. That is correct. And indeed, most of the language where the law supporting the notion that minors kept in the jail should not be kept in the general population is in Section 5-410. But I don't think it's a question of whether or not the wrong statute was looked at, because I believe both statutes were necessary here. And mainly because there is a portion of the Juvenile Court Act, Section 405-1-4.1, which requires that Statutes 4-410, 5-410, and 5-501 both apply when a minor is to be detained in a county jail. Therefore, when we're looking at whether or not a minor will be detained in a county jail, both of those statutes must be considered. Randall, I'm pled guilty, right, and has been sentenced? He has been, Your Honor. All right. And that raises the mootness issue. This comes before us on a public interest exception to interpret 410. 410 appears in Part 4 of the Juvenile Court Act, which governs, according to that portion of the Act, arrest and custody. 501 is titled Detention and Shelter Care Hearings and addresses the same subject. What is the public interest of this Court addressing an improperly used statute and interpreting that statute, especially when there's a mootness issue on top of everything else? Are you saying that 410 was improperly used here? I'm indicating that may be the case. Well, Your Honor, the public interest here is that, as exhibited by the letters that were submitted to the appellate court from, I believe there was 15 counties were asked how these procedures are handled in their counties. Only nine of them replied. However, it was very evident that at least seven of these counties were automatically transferring minors, and two of them stated affirmatively that those minors are then placed in the general population of the jail. The only county that never transferred a minor was DuPage County. Winnebago County, once they transferred the minor, put them on a separate tier where they were kept site and sound separate. It's evident that we have very little uniformity around the state as to how both 410 and 501 are being carried out. And this Court should take the opportunity to remind the counties of this state that the laws of this state are not suggestions, just as the Supreme Court rules are not suggestions. The legislature has codified these things to protect the children of this state, and it would appear that there is very little following of these laws going on. Well, this Court can certainly find the issue to be moot and say that 410 doesn't apply, and then say 501 does. But how can we go into any analysis contrary to what's been provided to us, and that is an interpretation of 410 in regards to Randall M. What are we going to do? We can't start giving advisory opinions on what's happening in other circuits and what they're employing. All we have before us is a moot case that perhaps used the wrong statute and is asking us to interpret the wrong statute. Well, I suspect we can say that in this regard 501 applies and 410 doesn't, and to the extent that that gives guidance to courts that are using 410 in this regard. But I don't know any way we can start deciding other cases or tell other counties what they're doing without a controversy in front of us. Well, there certainly is the issue here of 501 in that Randall was transferred to the county jail, and he was placed in the general population of the county jail, which would fall under 501, if I'm not mistaken. I mean, Randall testified at his hearing that he was placed in the general population of the jail. And although not part of the record, I'm aware of the fact that he was indeed placed in the general population of the county jail. And the public defender who represented Randall below stated several times without any word otherwise from either the court or from the state in that juncture that minors in Lake County were being transferred to the jail and being placed with the general population of the jail. Which 501, the county jail standards, and perhaps even portions of 410, if we're going to say that they apply, all blatantly say that minors over the age of 12 may not be kept in the same cell room or yard with confined adults. And there's good reasons for that. Minors that are kept in a county jail are five times as likely to be sexually assaulted, twice as likely to be beaten by staff, and at least eight, if not as many as 36 times more likely to commit suicide in the county jail. Now the state has also argued that the hearing requirement of Section 5-410 would be superfluous if minors were to be kept in a jail and then kept sight and sound separate once they're 17. I think the problem with that interpretation is that the statutes recognize that there are only 15 juvenile detention centers in this state. When a minor from a county that's outlying one of those areas is detained, sometimes they may be taken to a nearby detention center. But more often than not, most of the counties are having to maintain these children in their county jails and keep them sight and sound separate. The hearing requirement recognizes that there are some counties that will be faced with the choice of whether or not to detain a 17-year-old in a county jail or in a juvenile detention facility. And it gives them guidance as to how to make the decision of where to detain that minor. And it's important also that we remember that these are minors that are pre-adjudication. They have not been convicted. They have not been adjudicated. And they're not being charged with adult offenses. These are children who are charged with committing an offense before the age of 17. Now, Illinois holds a special place in the history of juvenile justice. And this Court should take this opportunity to maintain the integrity of our place in the history of juvenile justice. If this Court were to agree with the state that once a minor is placed in a county jail, he may be held in the general population of the jail, we would be the only state in the country permitting children as young as 17 to be held in the general population of the jail. That's ridiculous. And it's not something that this state should want to have for our children. And, in fact, at least four times in the Juvenile Court Act, the legislature has explicitly stated that minors over the age of 12 shall be kept sight and sound separate. If the legislature wanted to include an exception for minors 17 and over, they certainly could have written such an exception. But they have not. And the county jail standards, which are written by state agencies to ensure that state agencies are carrying out the mandates of the legislature, maintain that any juvenile with no reference to the age of the juvenile must be kept sight and sound separate from confined adults in county jails. There is absolutely nothing in the statutes or in the regulations to in any way indicate that once a minor who is being detained pre-trial for a juvenile delinquency petition, that that minor should be placed in the general population of a county jail. Nothing. What the state is attempting to do here is look at Section 5-4102C, Roman numeral V, and read an exception into the statutes, which simply isn't there. The fact that it requires a hearing, that's fine. That's great. But that doesn't mean that, you know, the altering of that statute, when they went from a presumptive transfer to now requiring a hearing, only evinces the legislature's intent that this transfer no longer be automatic and that it be permissive. It does not in any way evidence any desire on the part of the legislature that these minors be placed in the general population of the jail once they get there. Does it accomplish what you want to accomplish, Ms. Montgomery, by this court in indicating that 5-501 applies and that sets forth the conditions under which minors with pending delinquency matters may be held? And that, by the way, 5-014 says minors 12 years of age or older must be kept separate from confined adults and may not at any time be kept in the same cell room or yard with confined adults. That does accomplish my goals, Your Honor, although I would hope that this court would make clear that 5-501 doesn't contain any exception for minors over the age of 17, that when it says minors 12 and over, it means minors 12 and older. Minors are, as defined by the Juvenile Court Act, is anyone under the age of 21 subject to the Act. Well, that's when we get into the whole issue of how far can we go when it's really moved and nothing's before us. Okay. Well, if there's no further questions, I believe I've touched on all the points I wish to make. Thank you, Ms. Montgomery. Rebuttal, Mr. Chairman. Your Honor, the difference and distinction between subsections 5-410 and 5-501 is really unclear. Both contain the language that, quote, if a minor 12 years of age or older is confined and then contains a sight and sound limitation, and they both are discussing confinement that is, quote, pending an adjudicatory hearing and shall not exceed 40 hours. Any import to the fact that it's under the section labeled arrest in custody? I'm sorry, Your Honor? Is there any import to the fact that Part 4 of the Juvenile Court Act governs arrest in custody and that's where 410 comes under? I mean, isn't that really dealing with what the officer can do when they pick somebody up? I mean, we have a whole section on a detention hearing. Well, I don't think so, Your Honor, because 5-410, again, is titled non-secure custody or detention, and 5-501 is titled detention or shelter care hearing. So one's talking about detention and one's talking about the hearing. But in any event, if Your Honor is correct that 5-501 is what the court should have been looking at here, it's important, again, to note that if the court looked past the mootness doctrine, subsection 5014A limits 5014 very strictly to the first 40 hours. That's the only subsection that would have a sight and sound requirement. So therefore, if 5014 applied, it would only contain a sight and sound requirement for the first 40 hours. After that, the court would be free to order the person transferred to an adult facility free of any sight and sound restrictions. And I think the difference between 5-410 and 5-501, either way, the people win the case. But I think it's just important from a statutory interpretation standpoint to note that 5-410 contains this transfer hearing requirement, and it would be an unusual circumstance where the court would hold a transfer hearing after the person had been arrested but had not appeared before the court. So I think those two sections, 5-410 and 5-501, actually overlap. But again, regardless of which statute it is that applies, the people should win the case. Because if 410 applies, then 2C-5's plain language contains no express sight and sound limitation for the transfer to adult facilities. If 5-501 applies, then it's important to note that subsection 4 is limiting itself to strictly the first 40 hours. And people in respondent circumstance have been kept and detained longer than 40 hours. So in either event. You're saying that 40-hour limitation is in 5-501 or in 410? It's in both 5-410, in subsection 2-D1, and it's in 5-501, subsection 4-A. It's specifically limiting that sight and sound requirement to the first 40 hours. But to go back to the Chief Justice's question about the import of where 410 shows up, and organizationally in the court act that it's part four is arrest and custody, and both you and Ms. Montgomery say this is all pre-adjudicatory, and part five is labeled pre-trial. That's right, Your Honor. So at least conceptually, organizationally, it seems that it would go into part five, and you'd look at 5-10 at least to start with. Right. And again, the record is void of any arguments on that point below. But if that is the correct interpretation, then 5-501, subsection 4-A, limits that sight and sound requirement to the first 40 hours. So in either statute, whether 410 is strictly limited to the arrest stage or not, under either version, there is no sight and sound limitation for people in respondent circumstance. So in either event, the appellate court should be reversed, and the trial court's order should be affirmed. And what does 5-501 say beyond the 40 hours? 5-501 deals with beyond the 40 hours in subsection 4-B and 4-C, and again mirrors the language in 410, 2-D, 2 and 3, to discuss a seven-day period and an even longer than seven-day period, what specific training requirements the county jail must have to handle those juveniles. So it deals with the training that they have to have, but it doesn't deal with any type of sight and sound requirements that they must impose. Unless there are any further questions, I'd ask that you reverse the appellate court and affirm the trial court blow. All right. Thank you, Mr. Treble. Thank you, Ms. Montgomery. Thank you. Case number 105-137, In re Randall M., is taken under advisement as agenda number 5.